## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

| | |
|---|---|
| **PAUL R. WELLS**<br>**4507 Adrian St**<br>**Rockville, MD 20853** | : <br> : <br> : <br> : |
| **Plaintiff,** | : <br> :     **Civil Action No.:**_____ |
| **v.** | : <br> : <br> : |
| **RICHARD S. TISCHNER**<br>**DIRECTOR OF THE**<br>**COURT SERVICES AND OFFENDER**<br>**SUPERVISION AGENCY OF**<br>**THE DISTRICT OF COLUMBIA**<br>**633 Indiana Ave, NW**<br>**Washington, D.C. 20004** | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : |
| **Defendant.** | : |

===============================

## VERIFIED COMPLAINT

COMES NOW Plaintiff PAUL R. WELLS, by and through undersigned counsel, Billy L. Ponds, of The Ponds Law Firm, who respectfully submits this Verified Complaint against Richard S. Tischner in his official capacity as the current Director of the Court Services and Offender Supervision Agency of The District of Columbia to redress violations of Plaintiff's rights pursuant to Title VII. In support thereof, Plaintiff states as follows:

## JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §1331 and the 42 U.S.C. §2000e-16(c).

2.     At all relevant times herein, Plaintiff Paul R. Wells ("Wells") was a federal employee employed by the Court Services and Offender Supervision Agency of The District of Columbia ("CSOSA").

3.     At the time this Verified Complaint is being filed, Richard S. Tischner, in his official capacity as the Director of CSOSA, is the head of the federal agency that employed Plaintiff.

4.     All of the acts complained of herein occurred in the District of Colombia.

5.     Venue is proper in this Court as set forth herein.

6.     Wells made his initial contact with the EEO Office on May 18, 2017.

7.     On June 30, 2017, Wells submitted a formal complaint, outlining reprisal, sex discrimination, and hostile work environment charges.

8.     On March 31, 2020, the EEOC entered a final order when it granted the defendant's motion for summary judgement.

## PARTIES

9.     Wells is an African-American male who at all relevant times herein was employed at CSOSA.

10.    Richard S. Tischner is being sued in his official capacity as the current head of CSOSA.

## FACTS

11.    In February 2006, Wells commenced employment with CSOSA as the Deputy Director of the Re-Entry and Sanctions Center ("RSC").

12.    Dr. James Lanier ("Lanier") served as the Director of the RSC from the time Wells was hired until Lanier's extended sick leave in early 2015.

13.    Despite the fact that Wells only had the title of Deputy Director, Wells performed all of the tasks and responsibilities of the Director of the RSC and in addition to Wells's duties as the Deputy Director of the RSC.

14.    Wells hired the vast majority of the employees at the RSC.

15.    Wells developed all clinical aspects of assessment and the treatment regimen for the RSC.

16.     Wells was in charge of the day-to-day clinical operations of the RSC.

17.     Beginning in 2014 Wells had to take on all of the responsibilities under the span of function and control of Dr. Lanier as Dr. Lanier's illness caused him to be out on extended leave.

18.     In July 2015, Lanier passed away.

19.     A job posting was made for Director of the RSC in August 2015, which was the title Lanier had at the time of his death.

20.     Wells applied for the position of Director of the RSC within the application period.

21.     At the time Wells applied for the position of Director of the RSC he had been satisfactorily performing all of the duties and responsibilities of the Director of the RSC in addition to satisfactorily performing all of the duties of Deputy Director of the RSC.

22.     Wells was more than qualified for the position of Director of the RSC and met all of the qualifications and requirements for the position.

23.     Upon information and belief, Wells was the most qualified applicant for the position of Director of the RSC.

24.     When the application period for Director of the RSC closed, Carlos Perkins ("Perkins"), a Human Resources Specialist, informed Wells that he was the leading candidate who had applied for the position.

25.     Ware subsequently reposted a job announcement for the Director of the RSC and reopened the closed vacancy announcement.

26.     Upon information and belief, Ware reopened the closed vacancy announcement to prevent Wells from being selected to be the permanent Director of the RSC.

27.     Upon information and belief, there was no legitimate, non-discriminatory reason for Ware's reopening of the vacancy announcement.

3

28.     The reopened vacancy announcement was removed from CSOSA's email listings.

29.     Ware's actions to reopen a closed vacancy announcement violated 5 U.S.C. § 2302.

30.     Prior to reopening the vacancy for the Director of the RSC, Ware had never been involved in the hiring process.

31.     Wells applied for the Director of the RSC a second time within the application period for the reopened vacancy.

32.     Upon information and belief, Wells was the most qualified applicant for the position of Director of the RSC and had the most experience of any application during the first and second vacancy periods for the position of Director of the RSC.

33.     Interviews for the position of Director of the RSC did not commence for approximately one (1) year after Lanier's death.

34.     In the interim, Wells continued to satisfactorily perform all of the duties and responsibilities as both the Director and Deputy Director of the RSC.

35.     After numerous requests made by Wells, in April 2016 Wells's title was changed from Deputy Director to Acting Director of the RSC.

36.     Wells's role as Acting Director of the RSC was limited to a period of one hundred twenty (120) days.

37.     In December 2016, Dr. Michael Lipscomb ("Lipscomb"), the Chief Psychologist of the RSC, retired.

38.     Upon Lipscomb's retirement, Wells was responsible for fulfilling the duties of the Deputy Director, Director and Chief Psychologist of the RSC.

39.     Due to the fact that Wells was performing the duties of three positions, he worked twelve or more hours a day, seven (7) days a week and was also on call, averaging more than 60 hours a week.

40.     Wells requested assistance and support to help him perform all three roles, but none was provided.

41.     Upon information and belief there was no legitimate, non-discriminatory reason for CSOSA's failure to provide Wells with assistance or support.

42.     Wells successfully completed the first round of interviews for the position of Director of the RSC and proceeded to the second round of interviews.

43.     During the second round of interviews Wells interviewed with Jasper Ormond ("Ormond"), Associate Director of the Community Justice Programs ("CJP") and Berry.

44.     Berry arrived at the interview an hour late, did nothing to participate in the interview and paid no attention to Wells during the interview.

45.     Upon information and belief, Ware instructed Berry to not give Wells any consideration for being selected as the Director of the RSC.

46.     Wells successfully completed the second round of interviews for the position of Director of the RSC and proceeded to the third round of interviews.

47.     The third round of interviews was conducted by Ware, who arrived an hour late for Wells's interview.

48.     Upon information and belief, Ware never considered Wells for the position.

49.     Upon information and belief, Wells was the most qualified candidate for the position, having already fulfilled the duties and responsibilities of Director of the RSC satisfactorily.

50.     Director Ware made the final selection for Director of the RSC. Wells was not selected for the position of Director of the RSC.

51.     Upon information and belief, the sole reason Wells was not selected for the position of Director of the RSC was his sex and there was no legitimate, non-discriminatory reason for not selecting Wells for the position of Director of the RSC.

52.     The position of Director of the RSC required a clinical license in The District of Columbia.

53.     At all relevant times herein, Wells possessed a clinical license in The District of Columbia.

54.     The candidate selected for the position of Director of the RSC did not possess a clinical license in The District of Columbia, and upon information and belief lacked other qualifications for the position.

55.     Wells met with Ware to discuss his non-selection for the position of Director of the RSC.

56.     At the aforementioned meeting, Ware never provided Wells with a valid and legitimate non-discriminatory reason that he was not selected for the position of Director of the RSC.

57.     During the aforementioned meeting, Ware informed Wells that he had done a good job serving as the Acting Director.

58.     Soon after he met with Ware, Wells was transferred to the Community Supervision Services ("CSS") division and demoted from being an Acting Director and Deputy Director to a Special Assistant in September 2016.

59.     The Special Assistant position Wells was demoted to was rebranded as a "Senior Program Analyst".

60.     Erin Park, a female employee, served as Deputy Director of the RSC after Wells left the position.

61.    At the time Erin Park replaced Wells as Deputy Director of the RSC she was less qualified than Wells.

*62.*    Upon information and belief, Director Ware made the decision to demote Wells and replace him with Erin Park.

63.    Upon information and belief, the sole reason Wells was demoted was his sex and there was no legitimate, non-discriminatory reason for Wells's demotion.

64.    Upon information and belief, the Special Assistant position was rebranded as a "Senior Program Analyst" in attempt to make it appear that Wells had not been demoted from a Deputy Director to an administrative assistant.

65.    Upon information and belief, there was no business need at the CSS for Wells to fulfill as a Special Assistant at CSS.

66.    No one had held the Special Assistant position for over two (2) years prior to Wells's demotion.

67.    When Wells was demoted to a Special Assistant, he was lost a number of employment benefits that he had previously been provided, including but not limited to:

   a.  All seniority;

   b.  His office was downsized;

   c.  He was no longer able to telework;

   d.  He was no longer permitted to work a flexible or alternative schedule;

   e.  He was denied training opportunities; and

   f.  He was no longer provided administrative support staff.

68.    Upon information and belief, at the time she made the decision to demote Wells Director Ware knew Wells would lose the aforementioned employment benefits.

69.     Wells went from supervising 90 employees and 30 contractor staff members, as well as managing a budget of $8 million, to working in a Special Assistant position.

70.     Wells's demotion in September 2016 stripped him of all of his supervisory responsibilities that he previously held as Deputy Director of the RSC.

71.     Upon information and belief, the sole reason Wells was denied these aforementioned employment benefits was his sex and there was no legitimate, non-discriminatory reason for denying Wells these benefits.

72.     At the time Wells was transferred and demoted, it was the practice of CSOSA to disseminate a notification of employee transfers.

73.     Upon information and belief, prior to Wells's transfer, CSOSA disseminated a notification of transfer for all other employees who were transferred.

74.     Upon information and belief, no notification was disseminated for Wells's transfer.

75.     Upon information and belief, subsequent to Wells's transfer CSOSA disseminated a notification of transfer for all other employees who were transferred.

76.     The lack of notification for Wells's transfer gave the appearance that Wells was demoted as a disciplinary or corrective action, which negatively affected both Wells's standing within the agency and Wells's chances of being subsequently promoted.

77.     Upon information and belief, the lack of notification for Wells's transfer was intended to negatively affect Wells.

78.     One of Wells's major responsibilities as Senior Program Analyst was to perform clinical oversight of the Women's Behavioral Health Supervisory Team.

79.     Wells's responsibilities were later changed in early February 2017 to include seeing patients.

80.     Wells satisfactorily performed all of his responsibilities as a Senior Program Analyst and was qualified and competent to treat both male and female patients.

81.     On February 27, 2017, Wells's direct supervisor Yolanda Bethea ("Bethea") informed him that he would be transferred to an all male unit.

82.     Uba Hussein, a female employee, replaced Wells after he left the position of Senior Program Analyst.

83.     At the time Uba Hussein replaced Wells she was less qualified than Wells.

84.     Upon information and belief, Director Ware made the decision to demote Wells and replace him with Uba Hussein.

85.     Wells was also informed that after the aforementioned transfer he would no longer be permitted to provide clinical oversight to the women's units or treat female patients.

86.     Upon information and belief, all of the CSOSA employees who were similarly-situated to Wells, including but not limited to Uba Hussein, were permitted to work with both male and female patients.

87.     Wells's new direct supervisor Kisha Gordon ("Gordon") was the same grade as Wells, she reported directly to Bethea, she had significantly less experience than Wells and she was significantly less qualified than Wells.

88.     Wells's new position under the supervision of Gordon had no title or description of duties.

89.     Upon information and belief, all of the CSOSA employees who were similarly-situated to Wells had a title and description of duties for their position.

90.     The only reason proffered by CSOSA for the demotion of Wells on February 27, 2017, was that "it would be better if same gender employees oversaw the same gender offenders".

91.    Upon information and belief, the sole reason Wells was demoted a second time was his sex, and there was no legitimate non-discriminatory reason for Wells's demotion.

92.    Sex was not a bona fide occupational qualification that was reasonably necessary for clinical oversight of either the women's or men's unit at CSS.

93.    Sex was not a bona fide occupational qualification that was reasonably necessary for providing treatment to male or female patients at CSS.

94.    After the aforementioned demotion to a position with no title or description of duties Wells was no longer provided an office.

95.    After the aforementioned demotion to a position with no title or description of duties Wells was assigned to a cubicle and he was moved to a location in Southeast D.C.

96.    Upon information and belief, all of the CSOSA employees who were similarly-situated to Wells had an office.

97.    On May 12, 2017, Wells was constructively discharged from CSOSA.

98.    After Wells was constructively discharged no one was assigned to fulfill the position Wells held at the time he was constructively discharged.

99.    Upon information and belief, to this day CSOSA has not hired anyone to fulfill the position Wells held at the time he was constructively discharged.

100.    Upon information and belief, at all times relevant herein, Director Ware and other CSOSA employees who supervised Wells took the aforementioned adverse employment actions against Wells solely due to his sex, male.

101.    Upon information and belief, at all times relevant herein, Director Ware and other CSOSA employees who supervised Wells took the aforementioned adverse employment actions against Wells to force him to resign solely due to his sex, male.

## COUNT I
## DISPARATE TREATMENT SEX DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED, 42 U.S.C. §2000(e)

102.    Wells incorporates by reference paragraphs 1 through 101 as if fully set forth herein.

103.    Wells, as an African-American male, is a member of a protected class.

104.    Despite the fact that Wells was the most qualified applicant for the Director of the RSC he was not selected to fill that position.

105.    Upon information and belief, Wells's non-selection for the position of Director of the RSC was solely based on his sex, male.

106.    There was no legitimate, non-discriminatory reason for Wells's non-selection for the position of Director of the RSC. Any legitimate, non-discriminatory reason proffered by CSOSA is pretextual.

107.    The individual selected to fill the position of Director of the RSC was less qualified than Wells.

108.    Wells's demotion from Deputy Director of the RSC to a Special Assistant at the CSS in September 2016 constitutes an adverse employment action.

109.    Wells lost a number of employment benefits as a result of the demotion, including but not limited to:

      a.   All seniority;

      b.   His office was downsized;

      c.   He was no longer able to telework;

      d.   He was no longer permitted to work a flexible or alternative schedule;

      e.   He was denied training opportunities; and

      f.   He was no longer provided administrative support staff.

11

110.     Wells went from supervising 90 employees and 30 contractor staff members, as well as managing a budget of $8 million, to working in a Special Assistant position.

111.     Wells' demotion in September 2016 stripped him of all of his supervisory responsibilities that he previously held as Deputy Director of the RSC.

112.     Upon information and belief, the sole reason for Wells's demotion from Deputy Director of the RSC to Special Assistant at the CSS was his sex.

113.     There was no legitimate, non-discriminatory reason for Wells's demotion to a Special Assistant. Any legitimate, non-discriminatory reason proffered by CSOSA is pretextual.

114.     After Wells was demoted from Deputy Director of the RSC to a Special Assistant, a female employee who was less qualified than Wells replaced him as the new Deputy Director of the RSC.

115.     Wells's new position was renamed from a Special Assistant to Senior Program Analyst in an attempt to hide the fact that this transfer was a demotion.

116.     At all relevant times herein, Wells was qualified to provide clinical oversight of the female unit and provide treatment to female patients.

117.     On February 27, 2017, Wells was demoted from Senior Program Analyst to a position with no title and no job description.

118.     After Wells was demoted from Senior Program Analyst to a position with no title and no job description, a female employee who was less qualified than Wells replaced him as Senior Program Analyst.

119.     Wells's demotion from Senior Program Analyst to a position with no title and job description constitutes an adverse employment action.

120.     After his demotion on February 27, 2017, Wells was prohibited from providing clinical oversight to the female unit or treatment treat female patients.

121.    Upon information and belief, all CSOSA employees who were similarly-situated to Wells, including but not limited to Uba Hussein, were permitted to work in both male and female units and provide treatment to male and female patients.

122.    After Wells was demoted to a position with no title and job description, he was no longer provided an office.

123.    Upon information and belief, all CSOSA employees who were similarly-situated to Wells were provided an office.

124.    Upon information and belief, the sole reason for Wells's demotion from Senior Program Analyst to a position with no title and job description was his sex.

125.    There was no legitimate, non-discriminatory reason for Wells's demotion to a position with no title and job description. Any legitimate, non-discriminatory reason proffered by CSOSA is pretextual.

126.    On May 12, 2017, Wells was constructively discharged as a result of the discriminatory conduct as set forth herein that contributed to a hostile work environment.

127.    As set forth herein, CSOSA discriminated against Wells due to his sex, male.

128.    As a result of the aforementioned sex discrimination, Wells suffered damages, including but not limited to, emotional and psychological damage and distress, lost income, lost employment opportunities and other compensable injuries.

129.    In allowing the sex discrimination alleged herein, CSOSA has acted with malice and reckless indifference to Wells's rights pursuant to Title VII, harming Wells physically and economically.

130.    In allowing the sex discrimination alleged herein, and by remaining deliberately indifferent to this sex discrimination, CSOSA has displayed a reckless disregard for the Title VII rights of all of CSOSA's employees.

131.    Defendant's conduct described herein was malicious and demonstrated reckless indifference to Wells' federally protected rights, giving rise to punitive damages.

**COUNT II**
**HOSTILE WORK ENVIRONMENT SEX DISCRIMINATION IN VIOLATION OF**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED, 42 U.S.C. §2000(e)**

132.    Plaintiff incorporates by reference paragraphs 1 through 131 as if fully set forth herein.

133.    Wells, as an African-American male, is a member of a protected class.

134.    During the period that Wells was employed at CSOSA the workplace has been permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe and pervasive enough to alter the terms and conditions of Wells's employment and created an abusive working environment.

135.    This aforementioned harassment, bullying and discrimination of Wells was solely due to his sex, male.

136.    Upon information and belief, Director Ware harbored a bias against Wells due to his sex, male.

137.    The non-selection of Wells for the Director of the RSC position followed in close temporal proximity by Wells's loss of numerous employment benefits and his repeated demotions created a hostile work environment that negatively affected the terms and conditions of Wells's work environment.

138.    Director Ware, and other supervisors with the power to remedy this harassment and discrimination of Wells, were on actual and constructive notice of this harassment and

discrimination, but they chose to take no meaningful action, remaining deliberately indifferent to the situation.

139.   Upon information and belief, Director Ware was directly responsible for the majority of the harassment and discrimination set forth herein.

140.   This hostile work environment harmed Wells by causing him significant mental anguish, extreme emotional distress and culminated into two demotions, which constitute tangible adverse employment actions.

141.   This hostile work environment led to Wells's constructive discharge on May 12, 2017.

142.   As set forth herein, CSOSA discriminated against Wells due to his sex, male.

143.   As a result of the aforementioned sex discrimination, Wells suffered damages, including but not limited to, emotional and psychological damage and distress, lost income, lost employment opportunities and other compensable injuries.

144.   In allowing the sex discrimination alleged herein, CSOSA has acted with malice and reckless indifference to Wells's rights pursuant to Title VII, harming Wells physically and economically.

145.   In allowing the sex discrimination alleged herein, and by remaining deliberately indifferent to this sex discrimination, CSOSA has displayed a reckless disregard for the Title VII rights of all of CSOSA's employees.

146.   Defendant's conduct described herein was malicious and demonstrated reckless indifference to Wells' federally protected rights, giving rise to punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

I.  Re-pleads and re-alleges paragraphs 1 through 146 with the same force and effect

as if fully set forth herein;

II.  Subject to further discovery, reserves the right to amend the Verified Complaint;

III. An award of compensatory and punitive damages as permitted by law;

IV. Back pay pursuant to Title VII;

V.  Attorney's Fees, costs and prejudgment interest;

VI. And any other relief this Court deems just and fair;

## VERIFICATION

I, PAUL R. WELLS, hereby verify that the information contained in this Verified
Complaint is true and accurate to the best of my knowledge, recollection and belief.

PAUL R. WELLS

DATE

Subscribed to and sworn before me on this 14 day of July 2020

Notary Public

My Commission Expires: 10-30-2022

16

Paul Wells
By Counsel

Respectfully submitted,

*/s/Billy L. Ponds*
Billy L. Ponds
Counsel for the Plaintiff
The Ponds Law Firm
Bar Number 379883
1025 Connecticut Ave, N.W.
Suite 1000
Washington, D.C. 20036
Telephone Number: (202) 333-2922
E-Mail: billy.ponds@pondslawfirm.com

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

PAUL R. WELLS               :
                                     :
         Plaintiff,            :      Civil Action No.:_____
                                       :
         v.                     :
                                       :
RICHARD S. TISCHNER      :
DIRECTOR OF THE            :
COURT SERVICES AND OFFENDER  :
SUPERVISION AGENCY OF     :
THE DISTRICT OF COLUMBIA    :
                                       :
         Defendant.         :

==============================

**JURY DEMAND**

      The plaintiff hereby requests a jury trial on all triable issues, including the amount of damages to be awarded.

                     Paul Wells
                     By Counsel

                     Respectfully submitted,

                     */s/Billy L. Ponds*
                     Billy L. Ponds
                     Counsel for the Plaintiff
                     The Ponds Law Firm
                     Bar Number 379883
                     1025 Connecticut Ave, N.W.
                     Suite 1000
                     Washington, D.C. 20036
                     Telephone Number: (202) 333-2922
                     E-Mail: billy.ponds@pondslawfirm.com